TABLE OF CONTENTS

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAVIER DEL RIO, COLIN MEUNIER, and AARON DELAROCHE, on behalf of themselves and other similarly situated Employees,<br><br>    Plaintiffs,<br><br> v.<br><br>AMAZON.COM SERVICES, INC., AMAZON.COM.DEDC, LLC, and AMAZON.COM, INC.,<br><br>    Defendants. | Civil Action No. 3:21-cv-01152 (KAD) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED CLASS ACTION COMPLAINT**

LITTLER MENDELSON P.C.

Joshua D. Waxman (phv06588)
jwaxman@littler.com
LITTLER MENDELSON P.C.
815 Connecticut Avenue, NW, Suite 400
Washington, DC 20006-4046
Telephone: 202-842-3400
Facsimile: 202-842-0011

Michael S. McIntosh (phv206748)
mmcintosh@littler.com
LITTLER MENDELSON P.C.
1800 Tysons Boulevard, Suite 500
Tysons Corner, VA 22102
Telephone: 703.442.8425
Facsimile: 703.991.8016

Martha J. Keon (phv20241)
mkeon@littler.com
LITTLER MENDELSON P.C.
Three Parkway

1601 Cherry Street, Suite 1400
Philadelphia, PA 29102.1321
Telephone:    267-402-3000
Facsimile:     267-402-3131

Stephen P. Rosenberg (ct26601)
srosenberg@littler.com
LITTLER MENDELSON P.C.
One Century Tower
265 Church Street - Suite 300
New Haven, CT  06510
Telephone:    203.974.8700
Facsimile:     203.974.8799

ATTORNEYS FOR DEFENDANTS

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................. 1

II.  FACTS ................................................................................................................................. 2

   A.   May 2018-April 2021:  Plaintiffs Knew The Facts Upon Which This Late Amendment Is Based From Their Own Employment. ........................................... 2

   B.   July-October 2021:  Plaintiffs Filed A Complaint And First Amended Complaint, Which They Described As Seeking Pay For Time "Spent Waiting In Mandatory Screening Lines." ............................................................... 3

   C.   November 2021 – March 2022:  Defendants' Discovery Responses Further Confirmed The Facts That Plaintiffs Now Claim Are "New" To Support Their Motion. ...................................................................................... 4

   D.   August 2022:  Plaintiffs Seek to Amend The Complaint For A Second Time. ................................................................................................................... 5

III. LEGAL ARGUMENT .......................................................................................................... 7

   A.   Plaintiffs Have Failed To Show Good Under Fed. R. Civ. P. 16(b)(4) To Justify Such An Untimely Amendment Of The First Amended Complaint. .......... 7

   B.   Plaintiffs' Motion Should Be Denied Because Defendants Would Suffer Undue Prejudice. ................................................................................................ 11

   C.   Where, As Here, There Has Been A Long, Unexplained Delay In Seeking Leave To Amend, Undue Prejudice Is More Easily Established, And Plaintiffs' Motion Should Be Denied Under Fed. R. Civ. P. 15. ......................... 12

   D.   The Motion Should Be Denied As Futile. .......................................................... 13

IV.  CONCLUSION ................................................................................................................... 14

**I.      INTRODUCTION**

The Court should deny Plaintiffs' motion for leave to file a Second Amended Complaint. Discovery has closed for Defendants, and the dispositive and class certification motion deadlines are approaching.[1] Yet Plaintiffs now, at the eleventh hour, seek to significantly expand their alleged off-the-clock claims. From the outset, Plaintiffs have sought pay for time spent waiting for and undergoing security screening, but now they are seeking to add claims for time spent walking to security screening, time spent walking to and retrieving things from lockers after going through security, and time spent exiting the facility—in short, "'all' time the class was required to remain on the premises from clock out to swipe out (i.e., exit) to undergo security screening procedures." (*Plaintiffs' Motion to Leave to File Amended Complaint, Dkt. 63* at 2). Plaintiffs also seek to change the basis for their straight time claim to be based on a purported unwritten wage agreement. (*Id.*). These are new types of alleged off-the-clock time and a new theory to support their straight time claim—contrary to Plaintiffs' false assertions that they "are not adding any new factual allegations to this case," and that this is simply to "clarify" allegations already contained in the First Amended Complaint. (*Id.*). In fact, Plaintiffs have waited until discovery was ending to raise these new claims.

These new allegations are based on facts that were available to Plaintiffs during their employment and were known to them at the time they filed the Original Complaint more than a year ago, but which they never sought to plead until now. Notably, Plaintiffs have already amended their Complaint once, again with full access to information about their own legal theories, and did not include these new allegations then either. Given Plaintiffs' lack of diligence, there is no good cause to support amending the First Amended Complaint at this late date, when discovery

---

[1] Discovery remains open for Plaintiffs for the limited purpose of taking the depositions of persons whose declarations Amazon provided to Plaintiffs.

for Defendants has concluded and after Defendants have already expended significant time and resources engaging in discovery and both formulating and executing a defense strategy based on allegations that Plaintiffs now seek to significantly change. The mere filing of this motion is prejudicial, as would be any such amendment, and Defendants are now faced with the prospect of having to move for summary judgment and oppose class certification as to uncertain claims. Plaintiffs' conclusory, self-serving assertion that Defendants would not be prejudiced is wrong. (*Id.*)

While Plaintiffs attempt to make their motion more appealing by narrowing the scope of their claims in other ways, this is of no real value since it has long been clear that there are no facts to support the overly broad allegations that they now willingly abandon. No amendment of the pleadings is necessary to formalize these concessions, and had Plaintiffs actually deemed it necessary, they would have pursued such an amendment long ago. Their offer to do so now is an inconsequential make weight to support this otherwise untenable proposed amendment.

## II.     FACTS

### A.     May 2018-April 2021: Plaintiffs Knew The Facts Upon Which This Late Amendment Is Based From Their Own Employment.

Plaintiff Colin Meunier was employed at the Amazon Fulfillment Center in Windsor Connecticut ("BDL2") from May 29, 2018 to July 11, 2019, and was aware of the security screening process in place at the time. His claims are barred by a general release he signed on February 27, 2020. (*Defendants' Motion to Dismiss, Dkt. 37*).[2]

Plaintiff Aaron Delaroche was employed at BDL2 from November 6, 2019 to April 1, 2021, both before and after security screening was in place. (*Defendants' Answer to Interrogatory*

---

[2] Defendants initially moved to dismiss Plaintiffs' original Complaint on September 3, 2021, and moved to dismiss the Amended Complaint on October 4, 2021. (*Dkt. 10, 37*). Defendants' motion remains pending before this Court.

*No. 10, Keon Decl., Ex. A*).  He was aware from his own work experience of the security screening process and that it had ended.

Plaintiff Javier Del Rio was employed at the Amazon Fulfillment Center in North Haven, Connecticut ("BDL3") from November 16, 2020 to April 17, 2021.  He was aware that he never went through the security screening process alleged in the Complaint and First Amended Complaint because it has been discontinued seven (7) months before his hire.  (*Id.*).  Del Rio has no claim, which he appears to have conceded by his failure to appear for deposition.

> **B.      July-October 2021:   Plaintiffs Filed A Complaint And First Amended Complaint, Which They Described As Seeking Pay For Time "Spent Waiting In Mandatory Screening Lines."**

On July 27, 2021, Plaintiffs filed this putative class action in Connecticut Superior Court, claiming that under the Connecticut wage and hour laws, they should have been paid for time spent after clocking out while waiting for and undergoing security screening.  (*Complaint, Dkt. 2*). Nowhere in the Complaint is there any allegation that Plaintiffs should be paid for time spent walking to or from security screening or for time engaged in purely personal business, such as going to or accessing items in lockers or exiting the facility.

Defendants removed the case to this Court, and, on September 3, 2021, moved to dismiss the Complaint, arguing that (1) Plaintiff Meunier's claims are barred by a general release; (2) Plaintiff Del Rio failed to allege his claim with specificity, and could not cure the pleadings because he was not employed when security screening was in effect; and (3) that Plaintiffs' claim for straight time failed insofar as it was based on a statutory right. (*Dkt. 10*).

Rather than oppose the motion to dismiss, on September 20, 2021, Plaintiffs filed a First Amended Complaint, again claiming that they should have been paid for time spent waiting for and undergoing security screening. *(Dkt. 25)*.  They described the "mandatory security screening" in detail, alleging that it consisted of waiting in lines for security screening, proceeding through

metal detectors, and having their bags searched. *(Dkt. 25, ¶¶ 2, 23-30)*. Nowhere in the very specific and detailed allegations of the First Amended Complaint did Plaintiffs claim that they were seeking pay for time spent walking to or away from security, for time spent walking to or accessing items in lockers, or for time spent exiting the facility. *Id.*

Now, Plaintiffs claim to be surprised by "Defendants' construction of the complaint" as limited to time spent waiting for and underdoing security—even though both the Original Complaint and the First Amended Complaint alleged exactly that and nothing more (*Dkt. 63 at 7*), as did their opposition to Defendants' motion to dismiss:

- "Here, Defendants did not pay Meunier 'wages' for the time he spent waiting in mandatory screening lines," and "Defendants offered no evidence that the parties contemplated wages due Meunier for standing in Defendants' security lines..." (*Plaintiffs' Opposition to the Motion to Dismiss the First Amended Complaint, Dkt. 39 at 10, 12*).

- "Mr. Meunier never asked me to assert a claim for unpaid wages for time spent waiting in security lines during his [prior] case." (*Declaration of Thomas J. Durkin, Esq., Dkt. 39-1, at 2, ¶8*).

Plaintiffs' own discovery requests to Defendants likewise reflect their own understanding that they were seeking pay for time spent waiting in security lines, as eight (8) of their discovery requests asked about metal detectors and the time spent waiting in security lines, while none asked about lockers or the badging out process. (*Plaintiffs' Interrogatories Nos. 5, 7, 8, and 10 and Requests for Production Nos. 4, 6, 7, and 13, Keon Decl., Ex. B*).

      **C.    November 2021 – March 2022: Defendants' Discovery Responses Further Confirmed The Facts That Plaintiffs Now Claim Are "New" To Support Their Motion.**

On November 11, 2021, Defendants answered Plaintiffs' Interrogatories, informing Plaintiffs of the facts on which this motion is based, so none of the following facts are new:

- The security screening alleged in the Complaint and First Amended Complaint only occurred in during the alleged class period at two facilities in Connecticut: BDL2 in Windsor and BDL3 in North Haven after its July 19, 2019 launch;

- Employees were advised "not to bring bags or metallic items beyond the security perimeter that they would need to bring back out through security, and were provided lockers, coat racks, cubicles and refrigerators outside of the security perimeter in which to store personal items, so that they could exit through certain designated metal detectors for those exiting without bags or metallic items, often without breaking a stride.";

- The security screening was discontinued on March 15, 2020, with the onset of the COVID-19 pandemic; and

- Plaintiff Del Rio had no claim because security screening was not in effect during his employment.

*Defendants' Answers to Interrogatories No. 10, Keon Decl., Ex. A*). It was plain from the outset that associates had the option to put their belongings in lockers in order to avoid spending time waiting for or undergoing security screening. While Plaintiffs were already aware of the facts underlying their claims before they filed their Original Complaint, by November 11, 2021, when they received Defendants' Interrogatory Answers, they certainly had all the facts they needed to seek leave to amend the First Amended Complaint.

The Court issued an Order setting the deadline to amend pleadings as November 30, 2021. (*Dkt. 43*). Plaintiffs failed to move for leave to amend the First Amended Complaint by this deadline.

The parties continued to engage in discovery for months. During February and March 2022, Defendants produced associate training materials regarding locker usage and badging out of the facility's turnstile exits and videos showing associates walking through security and toward lockers and/or the facility's turnstile exits. (*Keon Decl., ¶4*). Upon receipt of these materials, Plaintiffs certainly had further confirmation of the facts they now claim are "new," yet they failed to seek leave to amend at that time.

**D.     August 2022:  Plaintiffs Seek to Amend The Complaint For A Second Time.**

Five months later, on August 26, 2022, Plaintiffs filed the instant motion seeking leave to

5

file a Second Amended Complaint.  (*Dkt. 63*). Plaintiffs' new proposed Second Amended Complaint adds off-the-clock claims not previously alleged, namely claims for: (1) time spent walking to security screening and beyond it; (2) time spent walking to and accessing items in lockers; and (3) time spent exiting the facility.  (*Dkt. 63-1 at ¶¶2, 23, and 28*).  Plaintiffs also seek to add an allegation that they had a wage agreement with Defendants but the agreement "was not in writing." (*Dkt. 63 at 2*).[3]  Notably, Plaintiffs fail to point to *any* specific testimony to show that they first learned facts during depositions to support amending the First Amended Complaint to add these new claims.

To the contrary, Plaintiff Delaroche has always known everything to which he testified during his deposition, so no new facts were discovered there.  Delaroche (the only Plaintiff whose claims are not barred or subject to dismissal) conceded that if an associate did not have to break stride going through security, that time should not be compensable time.  (*Delaroche Depo. at 84:8-14, Keon Decl., Ex. C*).  In answer to questions regarding his claimed unpaid time, he admitted that he did not use his locker and "never went to that area" other than to walk through it to the break room.  (*Id., at 45:1-15*).  He further testified that he did not believe that Amazon should pay for time spent in the locker room because the associates were "not required to be in that locker room." (*Id. at 101:8-17*).  He also agreed that Defendants should not have to pay for time associates spent after security—while in the break room resting or watching TV, waiting for a ride, getting a drink or a snack, or socializing with fellow associates.  (*Id. at 135:7-136:8*).

Plaintiff Meunier's deposition had not yet occurred when Plaintiffs' motion for leave to amend was filed and, therefore, his testimony could not be the basis of any change to the First

---

[3] Plaintiffs also propose to drop a number of allegations that it has been long clear lack evidentiary support: dropping Del Rio as a Plaintiff; limiting the claims to two facilities—BDL2 and BDL3; limiting the proposed class period to April 18, 2018 to March 15, 2020; and revising down their estimated unpaid time (even *with* their expansion of the claims) to two to six minutes per day.  (*Dkt. 63 at 1*).

Amended Complaint. Further, his testimony should not even be considered since his claims are barred by a general release and he is not a proper party. Plaintiff Del Rio has failed to appear for his properly-noticed deposition, and did not work at Amazon during any period when security screening was in place.

Defendants' first 30(b)(6) witness, Regional Loss Prevention Manager Mellisa Slavik, testified that employees can exit through security more quickly by leaving things in lockers and that badging in and out of the facility was to ensure that only authorized individuals enter the premises. (*Slavik Depo. at 25-29, 46-52, Keon Decl., Ex. D*). Defendants' second 30(b)(6) witness, Regional Human Resources Manager Derrik Atkinson, testified that after punching out, associates would walk through security and then either to their locker or to exit the building where they would swipe out using their badge. (*Atkinson Dep. at 28:2-17, Keon Decl., Ex. E*). The facts testified to were already known to Plaintiffs from documents and videos produced early in discovery—not to mention from their own experience while working for Defendants, long before they filed their Original Complaint. Discovery closed as to Defendants on September 2, 2022.[4]

### III. LEGAL ARGUMENT

#### A. Plaintiffs Have Failed To Show Good Under Fed. R. Civ. P. 16(b)(4) To Justify Such An Untimely Amendment Of The First Amended Complaint.

Plaintiffs have failed to show the required good cause under Fed. R. Civ. P. 16(b)(4) to justify amending the First Amended Complaint at this late date. "Where a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Grochowski v. Phoenix*

---

[4] Discovery remains open for Plaintiffs for the limited purpose of taking the depositions of persons whose declarations Amazon provided to Plaintiffs.

*Const.*, 318 F.3d 80, 86 (2d Cir. 2003) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000)). Moreover, in their Rule 26(f) Report of Parties' Planning Meeting, filed back in October 2021, the Parties agreed that motions seeking to amend the pleadings filed after the November 30, 2021 amendment deadline "will require, in addition to any other requirements under the applicable rules; *a showing of good cause for the delay*." (*Dkt. 38 at 5*) (emphasis added). Here, Plaintiffs' motion for leave to amend the Complaint for a second time fails to adequately account for their lengthy delay in alleging new claims which are based on facts and information that they have known for more than a year—a delay that is nothing short of dilatory.

In *Parker,* the plaintiff "was aware not only of his rights . . . prior to and throughout the course of this litigation, but also of [Defendant's] allegedly wrongful conduct" prior to bringing suit. *Id.* at 341. The Court upheld denial of leave to amend, finding there was not good cause, because "[w]hen he commenced this action [Plaintiff] had all the information necessary to support a breach of contract claim, and nothing he learned in discovery or otherwise altered that fact." *Id.* (*citing Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir.1998), noting the *Sosa* court had "refus[ed] to find good cause where 'the information supporting the proposed amendment to the complaint was available to [the moving party] even before she filed suit'"). The Court reasoned that at some point the pleadings need to be fixed:

> By limiting the time for amendments, the rule is designed to offer a measure of certainty in pretrial proceedings, ensuring that "at some point both the parties and the pleadings will be fixed." *See* Fed. R. Civ. P. 16 advisory committee's note (1983 amendment, discussion of subsection (b)). The rule provides, however, that in certain cases the court may determine that "[the deadline] cannot reasonably be met despite the diligence of the party seeking the extension." *Id.*

*Id.* at 339-40.

"A finding of good cause depends on the diligence of the moving party." *Id*. at 340. "To establish good cause a plaintiff must show that the deadline set by the court's scheduling order

*could not reasonably have been met* despite her diligence." *Lyddy v. Bridgeport Board of Educ.,* 2008 WL 5117679 *2 (D. Conn. Dec 4, 2008) (emphasis added). "The movant bears the burden of showing diligence." *Wade v. Kay Jewelers, Inc.*, No. 3:17-cv-00990 (MPS), 2018 WL 3553340, at *1 (D. Conn. July 24, 2018).

In *Leary v. Manstan*, No. 3:13-cv-00639 (JAM), 2015 WL 521497 (D. Conn. Feb 9, 2015), Leary had brought a Connecticut Unfair Trade Practices Act claim asserting that a book the defendants published infringed on his copyright on his unpublished manuscript. *Id.* at *1. Nearly four months after the deadline to amend the pleadings, Leary sought to amend the complaint to add a second copyright claim regarding a photograph that appeared in the book. *Id.* at *3. Like Plaintiffs here, Leary claimed that he had recently learned new facts in discovery, specifically how the defendants procured the photograph. *Id.* at *4. The Court rejected that assertion, noting that "[t]his information was not new to plaintiff in the fall of 2013. To the contrary, plaintiff's belated copyright infringement claim is based on facts known—or that should have been known—to plaintiff since well before the commencement of this suit." *Id.* at *4. The Court observed that Leary had read the book at least twice before bringing suit, and disallowed Leary's proposed amendment, reasoning that Leary "was not diligent in raising this new claim." *Id.*

Likewise here, Plaintiffs knew the necessary facts before filing the Original Complaint more than a year ago and before filing the First Amended Complaint on September 20, 2021. These known facts were further confirmed over five months ago, early in the discovery period. Plaintiffs' failure to seek leave to amend until now, at the close of discovery, is a patent failure to exercise the required diligence. *E.g. Gullo v. City of New York*, 540 Fed. Appx. 45, 47 (2d Cir. 2013) (summary order) (finding the "district court acted well within its discretion in concluding that plaintiffs' three-month failure to move for amendment after learning the officers'

9

names failed to demonstrate the diligence necessary to satisfy Rule 16."). Plaintiffs' dilatory failure to amend their Original and First Amended Complaints for months after the facts underlying this new proposed amendment were undisputedly known to them is fatal to their request.

"***If a party has not been diligent, the good cause inquiry should end.***" *Stein v. Needle*, No. 3:19-cv-1634 (VLB), 2021 WL 5889343 *3 (D. Conn. Dec. 13, 2021) (emphasis added); *quoting Nino v. JPMorgan Chase Bank, N.A.*, No. 3:18-cv-1743 (RNC), 2020 WL 1532369, at *8 (D. Conn. Mar. 31, 2020).  It is beyond argument that Plaintiffs here have not been diligent and have not met their burden, given that the facts underlying their attempted expansion of this case were known to them even before suit was filed in July 2021.  Indeed, Plaintiffs do not even make a serious attempt to demonstrate good cause to amend.

Similarly, Plaintiffs do not try to justify their delay in seeking leave to amend.  They do not even concede that there was a delay. They choose, instead, to engage in the fiction that they learned (unspecified) things from the Delaroche and 30(b)(6) depositions and acted promptly thereafter. (*Pl. Motion, Dkt. 63, at 5*).  Plaintiffs also cite to two cases indicating that a <u>short</u> delay from acquiring the information to filing the motion shows diligence (*id.*), but those cases are irrelevant because Plaintiffs' delay here cannot reasonably be characterized as "short"—they knew the information underlying their claims directly more than a year ago and had been provided the same information earlier in the discovery period, months before this belated attempt to grossly expand their claims.

Plaintiffs have failed to act diligently and do not have good cause for the delay in seeking to amend. Consequently, this Court should deny the Motion.

**B.     Plaintiffs' Motion Should Be Denied Because Defendants Would Suffer Undue Prejudice.**

The lengthy delay here carries another effect: substantial prejudice to Defendants. Under both Rule 15 and Rule 16, the court may "also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). Undue prejudice may exist where the opposing party would be required to "expend significant additional resources to conduct discovery and prepare for trial" or "the amendment will significantly delay resolution of the dispute." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). Courts in this Circuit have repeatedly found prejudice and rejected eleventh hour requests to amend pleadings where the parties have already completed discovery and are at the summary judgment stage. *Werking v. Andrews*, 526 Fed. Appx. 94, 96 (2d Cir. 2013) (summary order), *citing AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A.*, 626 F.3d 699, 726–27 (2d Cir. 2010); *Krumme v. WestPoint Stevens, Inc.*, 143 F.3d 71, 88 (2d Cir. 1998); *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir.1985).

Here, discovery is closed for Defendants with Defendants having premised their legal defense on the claims alleged, and having developed evidence and arguments to support their motion for summary judgment and their opposition to class certification, accordingly. Plaintiffs' motion falls under the principles of *Werking* and the cases cited therein. Depending on when the Court decides the motion, it is unduly prejudicial to Defendants to have to file their motion for summary judgment and opposition to class certification without even knowing what the factual claims in the case are.

Plaintiffs claim that Defendants are not prejudiced because no additional discovery is needed to respond to their expanded claims for additional types of alleged unpaid time. (*Dkt. 63*

11

*at 7*). This is simply wrong—Plaintiffs have completely changed their theory of the case and significantly expanded the scope of their claims after Defendants' opportunity to take discovery has ended. Defendants are now put in the position of having to rely on evidence, arguments, and strategy developed to oppose the narrower claims actually alleged in the First Amended Complaint, or seeking more time to retread ground previously covered to assess what more is needed, incurring more time and expense, and delaying the case further. This is highly prejudicial and warrants denial of this motion.

Plaintiffs claim that there is no prejudice because "liability and damages discovery has not occurred yet because the court bifurcated discovery. Any additional discovery can occur during that discovery period." (*Id. at 7*). There is no citation to such an order, as the Court has issued no such order upon Plaintiffs' counsel's request that discovery *not* be bifurcated. (*See Rule 26(f) Report of Parties' Planning Meeting, Dkt. 38 at 6*) ("Plaintiffs do not believe that bifurcating discovery is necessary or advisable. This court has consistently endeavored to move its cases along quickly and efficiently and bifurcation frustrates both of those goals.") Indeed, the only limitation that the Court set forth concerning discovery was that "initial discovery is limited to the extent that it shall not include discovery of information regarding class damages or discovery of information that will only be germane if Plaintiffs' class is ultimately certified." (*Dkt. 43*). Consistent with this order, all discovery has been conducted as to liability and damages for the named Plaintiffs. Dissatisfied with how their case has gone after discovery revealed the weaknesses in their claims, Plaintiffs are trying to move the goal posts, a tactic that should be rejected.

    **C.**    **Where, As Here, There Has Been A Long, Unexplained Delay In Seeking Leave To Amend, Undue Prejudice Is More Easily Established, And Plaintiffs' Motion Should Be Denied Under Fed. R. Civ. P. 15.**

While Rule 15(a) grants the Court discretion to rule upon motions to amend pleadings, it is well-settled that the Court's exercise of discretion "is limited when there is 'undue delay, bad

faith, or dilatory motive' on the part of the moving party, and 'undue prejudice to the opposing party . . . .'" *Evans v. Syracuse City School Dist.*, 704 F.2d 44, 46 (2d Cir 1983), quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962). The longer the unexplained delay, the easier it is to show prejudice:

> As a practical matter, however, any delay in asserting [a claim] for a significant period of time will almost invariably result in some "prejudice to the nonmoving party . . . . The proper standard is one that balances the length of the delay against the resulting prejudice . . . . The longer the period of unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.

*Evans*, 704 F.2d at 46-7 (emphasis added, quoting *Advocat v. Nexus Industries, Inc.*, 497 F. Supp. 328, 331 (D. Del. 1980)).

As set forth above, Plaintiffs knew all the facts that underlie the new allegations even before they filed the Original Complaint in July 2021—let alone before they filed the First Amended Complaint. Without question, there has been an undue delay in filing to amend the complaint.[5] As also set forth above, Defendants would be unduly prejudiced if the Motion were granted by being subjected to an uncertain, moving target in moving for summary judgment and in opposing class certification. Given that Plaintiffs do not even concede their delay, much less explain it or identify any good cause for the delay, undue prejudice exists here. *Id.*

    **D.**    **The Motion Should Be Denied As Futile.**

The Court should deny the motion to amend as futile. The new proposed Second Amended Complaint reasserts claims that cannot succeed as a matter of law—claims that are barred by Plaintiff Meunier's general release and straight time claims based on a violation of the Connecticut

---

[5] Moreover, as discussed above, in their Rule 26(f) Report of Parties' Planning Meeting, the Parties agreed that motions seeking to amend the pleadings filed after the November 30, 2021 amendment deadline "will require, in addition to any other requirements under the applicable rules; *a showing of good cause for the delay.*" (*Dkt. 38 at 5*) (emphasis added).

13

wage and hour laws. The Court should deny this motion as futile, for all of the reasons set forth in Defendants' pending motion to dismiss the First Amended Complaint, which is fully briefed and awaiting decision. (*Dkt. 37*). In addition, Plaintiff Delaroche (the only Plaintiff whose claims are not barred or subject to dismissal) has admitted that time spent in the locker room was not compensable because it was not required, foreclosing this new claim. Moreover, there is no need to further amend the First Amended Complaint to narrow the claims alleged or conform the pleadings to the discovery. Plaintiffs can make these concessions regarding their unsupported factual allegations in the upcoming motion practice.

Finally, along with the other misrepresentations made in their motion, Plaintiffs once again falsely claim that C.G.S. Sec. 31-71a(3) refers to and requires pay for <u>all</u> hours worked. (*Dkt. 63 at 8*). It does no such thing. It defines "wages" as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation." Further, unlike the laws of other states to which Plaintiffs refer, Connecticut law explicitly provides for 15-minute rounding of time, a fact that Plaintiffs readily concede. (*Dkt. 63-1, ¶18*). Allowing for 15-minute rounding does not evidence a legislative intent to pay for every second or minute.

## IV.    CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court deny Plaintiffs' Motion because there is no good cause to amend the First Amended Complaint at this late date, and such an amendment would be unduly prejudicial and futile.

Dated: September 7, 2022              Respectfully submitted,

                                                          LITTLER MENDELSON P.C.

                                                          */s/ Martha J Keon*
                                                          Joshua B. Waxman (phv06588)

jwaxman@littler.com
LITTLER MENDELSON P.C.
815 Connecticut Avenue, NW, Suite 400
Washington, DC 20006-4046
Telephone:   202-842-3400
Facsimile:    202-842-0011

Michael S. McIntosh (phv206748)
mmcintosh@littler.com
LITTLER MENDELSON P.C.
1800 Tysons Boulevard, Suite 500
Tysons Corner, VA 22102
Telephone:   703.442.8425
Facsimile:    703.991.8016

Martha J. Keon (phv20241)
mkeon@littler.com
LITTLER MENDELSON P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 29102.1321
Telephone:   267-402-3000
Facsimile:    267-402-3131

Stephen P. Rosenberg (ct26601)
srosenberg@littler.com
LITTLER MENDELSON P.C.
One Century Tower
265 Church Street - Suite 300
New Haven, CT  06510
Telephone:   203.974.8700
Facsimile:    203.974.8799

ATTORNEYS FOR DEFENDANTS

CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2022, a copy of the foregoing was filed electronically andserved by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system. Parties may access this filing through the Court's electronic filing system.

/s/ *Martha J. Keon*

4873-2790-9427.1 / 096748-1003