## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DEL RIO, et al., | ) | 3:21-CV-01152 (KAD) |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMAZON.COM SERVICES, LLC, et al., | ) | SEPTEMBER 30, 2022 |
| *Defendants*. | ) | |

**MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION TO DISMISS (ECF NO. 37) & PLAINTIFFS' MOTION FOR LEAVE TO AMEND (ECF NO. 63)**

Kari A. Dooley, United States District Judge:

Plaintiffs, Javier Del Rio, Colin Meunier, and Aaron Delaroche, bring this putative class action against Defendants, Amazon.com Services, LLC, Amazon.com.dedc, LLC, and Amazon.com, Inc. on behalf of themselves and similarly situated warehouse workers employed by Defendants. Plaintiffs assert by way of an Amended Complaint two causes of action against Defendants: (1) a failure to pay straight time wages in violation of Conn. Gen. Stat. §§ 31-72; 31-71b et seq. and Conn Agencies Regs. § 31-60-11; and (2) a failure to pay overtime wages in violation of Conn. Gen. Stat. §§ 31-68; 31-76b(2)(A) et seq. The gravamen of Plaintiffs' Amended Complaint is that Defendants required Plaintiffs to go through a mandatory security screening process prior to leaving Defendants' Connecticut facilities but failed to pay Plaintiffs their hourly wage for the time it took to do so. Defendants moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), which Plaintiffs oppose. While the motion to dismiss was pending, Plaintiffs moved for leave to file a Second Amended Complaint, which Defendants oppose. For the reasons set forth below, Defendants' motion to dismiss is GRANTED in part. (ECF No. 37) Plaintiffs' motion for leave to amend is DENIED. (ECF No. 63)

**Standard of Review**

When deciding a motion to dismiss under Rule 12(b)(6), the Court "must accept as true the factual allegations in the complaint and draw all inferences in the plaintiff's favor." *Kinsey v. New York Times Co*., 991 F.3d 171, 174 (2d Cir. 2021) (quotation marks, alterations, and citation omitted). To survive a motion to dismiss filed pursuant to Rule 12(b)(6), the "complaint must 'state a claim to relief that is plausible on its face,'" setting forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 556). At this stage "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Id.*

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint. . . ." *McCarthy v. Dun & Bradstreet Corp*., 482 F.3d 184, 191 (2d Cir. 2007); *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp*., 602 F.3d 57, 64 (2d Cir. 2010). "[I]f . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in [Fed. R. Civ. P.] 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Glob. Network Commc'ns, Inc. v. New York*, 458 F.3d 150, 154–55 (2d Cir. 2006); *Carter v. Stanton*, 405 U.S. 669, 671 (1972) (per curiam); Fed. R. Civ. P. 12(d). "Federal courts have complete discretion to determine

2

whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion. . . ." *HB v. Monroe Woodbury Cent. Sch. Dist*., No. 11-CV-5881 CS, 2012 WL 4477552, at *4 (S.D.N.Y. 2012); *Ware v. Associated Milk Producers, Inc*., 614 F.2d 413, 415 (5th Cir. 1980); *Nutt v. Norwich Roman Cath. Diocese*, 921 F. Supp. 66, 68 n. 1 (D. Conn. 1995); *Galvin v. Lloyd*, 663 F. Supp. 1572, 1575 (D. Conn. 1987).

**Allegations**

The Court accepts as true the allegations in Plaintiffs' Amended Complaint, which are summarized as follows.

Defendant Amazon.com Services, LLC is a limited liability company organized and existing under the laws of the state of Delaware, headquartered in Seattle, Washington. (Amended Complaint, ECF No. 25 at ¶ 4) It is registered as a business with the Connecticut Secretary of State. (*Id*.) Defendant Amazon.com.dedc, LLC is a corporation organized and existing under the laws of the state of Delaware, headquartered in Seattle, Washington. (*Id*. at ¶ 5) Defendant Amazon.com, Inc. is a corporation organized and existing under the laws of the state of Delaware, headquartered in Seattle, Washington. (*Id*. at ¶ 6) Defendants collectively own and operate approximately ten facilities in Connecticut, to include "fulfillment centers," "delivery stations," and "sorting centers." (*Id*. at ¶ 7) Defendants employ warehouse workers at their Connecticut facilities, like Plaintiffs Del Rio, Meunier, and Delaroche, who are not exempt from mandatory security screening protocol. (*Id*. at ¶ 22)

Plaintiff Del Rio is an individual residing in New Haven, Connecticut. (*Id*. at ¶ 8) Del Rio was employed by Defendants as a Packer at their North Haven, Connecticut facility from November of 2020 to April of 2021. (*Id*.) Plaintiff Meunier is an individual residing in Royal Oak, Michigan. (*Id*. at ¶ 9) Meunier was employed by Defendants as a Stower and Picker Packer at their

3

Windsor, Connecticut facility from May 29, 2018 until July 10, 2019. (*Id.*) Plaintiff Delaroche is an individual residing in Granby, Connecticut. (*Id.* at ¶ 10) Delaroche was employed by Defendants as a Stower, Packer, Line Straightener, and Induct at their Windsor, Connecticut facility from November of 2019 until April of 2021. (*Id.*)

In conjunction with their employment, Defendants required Plaintiffs and similarly situated non-exempt warehouse workers at their Connecticut facilities to go through a mandatory security screening process prior to leaving the facilities at the end of their shift, or for their meal break. (*Id.* at ¶ 24) As part of this screening process, Defendants required Plaintiffs to wait in lines leading up to a security screening area and to proceed through a metal detector. (*Id.* at ¶¶ 25; 27) If the metal detector's alarm sounds, Defendants subjected Plaintiffs to individual searches conducted by a security guard. (*Id.* at ¶ 28) Defendants also required all bags and personal items carried by Plaintiffs to be individually searched by security guards. (*Id.* at ¶ 26) Defendants prohibited Plaintiffs from leaving the facility until they have successfully completed the security screening process, which routinely took between ten and twenty minutes.[1] (*Id.* at ¶¶ 28–29) Moreover, Plaintiffs allege that Defendants' mandatory security screening process resulted in an automatic thirty-minute deduction from their unpaid meal break.[2] (*Id.* at ¶¶ 31–37)

Plaintiffs allege that Defendants agreed to compensate them and similarly situated non-exempt warehouse workers at their Connecticut facilities based on an hourly rate for their time at work. (*Id.* at ¶ 38) Notwithstanding, Plaintiffs allege that Defendants have not paid them for the time elapsed between the conclusion of their shifts and the conclusion of the mandatory security

---

[1] Plaintiff alleges that, with delays, the mandatory security screening process "could take over [twenty] minutes." (*Id.* at ¶ 29)

[2] Plaintiff alleges that the mandatory security screening process during the unpaid meal break period routinely took seven to ten minutes to complete, and sometimes took over ten minutes with delays. (*Id.* at ¶ 36) Plaintiffs were not able to eat their meals during the mandatory security screening process. (*Id.* at ¶ 37)

screening process, or the time elapsed between the commencement of their unpaid meal period and the conclusion of the mandatory security screening process. (*Id*. at ¶¶ 30; 38) Plaintiffs further allege that, for some putative class members, a portion of the time spent in Defendants' mandatory security screening process qualified as overtime.[3] (*Id*. at ¶ 39)

Plaintiffs bring this class action on behalf of themselves and all other putative class members, which Plaintiffs define as follows: "All current and former employees of Defendants who were employed as hourly, non-exempt warehouse workers in Connecticut at any time from April 16, 2018 through the date of final judgment in this matter." (*Id*. at ¶ 43) Plaintiffs allege that the putative class members consist of "over 10,000 warehouse workers" employed by Defendants at their Connecticut facilities. (*Id*. at ¶ 22).

Additional relevant facts shall be set forth below as necessary.

**Discussion**

Plaintiffs assert two causes of actions against Defendants based on their alleged failure to pay earned wages. Specifically, Plaintiffs allege in support of both Counts that Defendants violated Connecticut's Minimum Wage Act by failing to compensate Plaintiffs and putative class members for time spent undergoing mandatory security screening during their meal breaks and at the end of their shifts. (ECF No. 25 at ¶¶ 50, 52) Defendants have moved to dismiss Count One in its entirety and Count Two with respect to Plaintiffs Del Rio and Meunier. The Court addresses each argument in turn.

### *Count One*

In Count One of the Amended Complaint, Plaintiffs claim that Defendants failed to pay their straight time wages "*in violation of Connecticut's Minimum Wage Act*," Conn. Gen. Stat. §§

---

[3] For example, Plaintiffs Meunier and Delaroche allege that some time they spent waiting in Defendants' mandatory security screening process qualifies as overtime. (*Id*. at ¶¶ 40–41)

31-72; 31-71b et seq. and Conn Agencies Regs. § 31-60-11. (Emphasis added) Defendants argue that Count One must be dismissed in its entirety because it is premised on a right to straight time pay "that does not exist under Connecticut's Minimum Wage Act and because the Connecticut Supreme Court has held that § 31-72 is a mechanism to enforce existing wage obligations," and "does not create a substantive right to wages."[4] (ECF No. 37-1 at 1, 5) The crux of Defendants' argument is that "Plaintiffs failed to allege . . . an agreement [setting forth wage obligations] and breach of that agreement." (ECF No. 41 at 1) In other words, although Defendants concede that § 31-72 "exists to enforce wage agreements," (ECF No. 37-1 at 4), Defendants argue that Plaintiffs have not sufficiently alleged any wage agreement that was breached which would entitled them to straight time pay for non-overtime hours. Instead, Defendants note that Plaintiffs' allegations in Count One specifically allege that they "violated [*Connecticut's Minimum Wage Act*] by failing to compensate Plaintiffs." (ECF No. 25 at ¶ 50) Defendants particularly "[u]nderscore[] that Plaintiffs' § 31-72 claim is based on [Connecticut's Minimum Wage Act], rather than an agreement to pay wages." (ECF No. 41 at 1)

In response, Plaintiffs identify the allegations set forth in their Amended Complaint which state that Defendants "agreed to pay Plaintiffs an hourly rate for the hours they work." (ECF No. 25 at ¶ 38) Plaintiffs argue that this allegation reasonably supports the inference that Defendants breached a wage agreement which entitles them to straight time pay for non-overtime hours. While the Court agrees with Defendants that § 31-72 is a mechanism by which to enforce wage agreements, the Court agrees with Plaintiffs that the allegations plausibly allege such an agreement and a breach of the agreement by Defendants. In addition to the allegation that Defendants agreed

---

[4] *See also* (ECF No. 37-1 at 6) ("[T]here is no actionable claim for straight time pay for non-overtime hours . . . under [Connecticut's] Minimum Wage Act. . . . [Section 21-72 contains] no mention of a duty to pay employees straight time wages for non-overtime hours.").

to pay Plaintiffs an hourly wage for the hours worked, the Amended Complaint alleges that "Defendants did not pay Plaintiffs . . . [the] compensable work time" involved in the mandatory security screening process. (*Id*. at ¶ 2) Defendants' narrow focus on the failure to allege an agreement to compensate Plaintiffs for the time spent complying with the mandatory security screenings misses the point. Plaintiffs allege that insofar as the process was mandatory, it falls within the agreement to pay Plaintiffs their hourly wage for however long the process took.

Accordingly, drawing all reasonable inferences in Plaintiffs' favor as the Court must, *Kinsey*, 991 F.3d at 174, and all reasonable inferences that Defendants are liable for the misconduct alleged, *Kolbasyuk*, 918 F.3d at 239, the Court finds that the Amended Complaint reasonably supports the inference that Defendants violated § 31-72 on the basis of their breach of the agreement to pay hourly compensation to Plaintiffs for the hours they worked. Accordingly, Defendants' motion to dismiss Count One for failure to state a claim is denied.

### *Counts One and Two—Plaintiff Meunier*

Alternatively, Defendants assert an affirmative defense to Counts One and Two with respect to Plaintiff Meunier, specifically, that "Plaintiff Meunier's claims are barred by a general release he signed over seven months after the conclusion of his employment, while represented by counsel in this case." (ECF No. 37 at 1) Plaintiff Meunier previously sued Defendant Amazon.com Services, LLC for disability discrimination. In resolving the litigation, Plaintiff Meunier signed the general release now relied upon in Defendants' affirmative defense. In support of this argument, Defendants attach two documents to their 12(b)(6) motion: (1) a September 2, 2021 declaration of Defendants' Human Resources Manager, Emily Kidder; and (2) a 2020 settlement agreement and general release between Plaintiff Meunier, Defendant Amazon.com Services, LLC, and "each of its divisions, affiliates, parents, subsidiaries and operating companies" ("Release").

(ECF No. 37-2) In response, Plaintiffs contest the legal and factual applicability of the Release to the claims asserted in the Amended Complaint. As a factual matter, Plaintiff Meunier submits that it was not the parties' intention to release any wage claims at the time he settled his disability discrimination claim. (ECF No. 39 at 9–10) In support of this argument, Plaintiffs submit an October 22, 2021 declaration of Plaintiff Meunier's former attorney who represented him in the disability discrimination claim, Thomas J. Durkin. (ECF No. 39-1) As a legal matter, Plaintiff Meunier argues that Conn. Gen. Stat. § 31-72 renders the release unenforceable as to his wage claims. (ECF No. 39 at 10–18)

Defendants' argument with respect to Plaintiff Meunier relies on extraneous documents outside the pleadings—the release itself and the affidavit of Ms. Kidder. As discussed, "[f]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion. . . ." *Monroe Woodbury Cent. Sch. Dist*., 2012 WL 4477552, at *4; *Ware*, 614 F.2d at 415. Here, the parties offer competing factual narratives regarding the scope of the Release and its applicability to Plaintiff Meunier's unpaid wage claims. On this record, the Court elects not to accept these extraneous documents and affidavits, thus converting the motion to one for summary judgment *Galvin v. Lloyd*, 663 F. Supp. 1572, 1575 (D. Conn. 1987). These issues are better addressed after discovery has been completed and the facts fully developed. Accordingly, limiting its analysis to the four corners of the Amended Complaint and for the reasons articulated above, the motion to dismiss Plaintiff Meunier's unpaid wage claims in Counts One and Two is denied.

### Count Two—Plaintiff Del Rio

In Count Two of the Amended Complaint, Plaintiffs claim that Defendants failed to pay their overtime wages in violation of Conn. Gen. Stat. §§ 31-68; 31-76b(2)(A) et seq. Defendants

argue that Count Two must be dismissed with respect to Plaintiff Del Rio because he "fails to identify any workweek during which he worked over [forty] hours and passed through security while exiting [Defendants'] facility to support his claim for overtime wages." (ECF No. 37 at 1) In response, Plaintiffs clarify that "Plaintiff Del Rio does not assert that he is owed overtime wages." (ECF No. 39 at 9) Any claim for unpaid overtime wages set forth in Court Two by Plaintiff Del Rio is dismissed.

### Motion for Leave to Amend

On August 26, 2022, Plaintiffs moved for leave to file a Second Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2). Defendants oppose Plaintiffs' motion.

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc*., 970 F.3d 133, 142 (2d Cir. 2020) (citing Rule 15(a)(2)). "'In the absence of any apparent or declared reason,' including 'undue delay, bad faith or dilatory motive on the part of the movant, . . . the leave sought should, as the rules require, be freely given.'" *Hannah v. Walmart Stores, Inc*., 803 F. App'x 417, 422 (2d Cir. 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *WGH Commc'ns, Inc. v. Penachio Malara LLP*, No. 21-570-CV, 2022 WL 569665, at *1 (2d Cir. Feb. 25, 2022). However, "[w]here a scheduling order has been entered, the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Grochowski v. Phoenix Constr.,* 318 F.3d 80, 86 (2d. Cir. 2003).

"Leave may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir.

2014) (internal quotation marks omitted). Regarding undue delay, "[t]he party seeking leave to amend [] has the burden to explain the delay and show why an amendment is warranted." *Boudreau v. Gonzalez*, No. 3:04CV1471 (PCD), 2006 WL 8446804, at *2 (D. Conn. Oct. 24, 2006). "[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Messier v. Southbury Training Sch.*, No. 3:94-CV-1706 (EBB), 1999 WL 20907, at *3 (D. Conn. Jan. 5, 1999) (internal quotation marks omitted). "In determining what constitutes prejudice, we generally consider whether the assertion of the new claim or defense would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (internal quotation marks omitted). Importantly, though, "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).

Here, Plaintiffs seek to further amend their Amended Complaint to, *inter alia*, "clarify that their lawsuit seeks back wages for "all" time the class was required to remain on the premises from clock out to swipe out (i.e., exit) to undergo security screening procedures."[5] (ECF No. 63 at 2) Specifically, Plaintiffs' proposed amendment seeks to expand the mandatory screening process for which Plaintiffs seek compensation to "[t]he time spent walking to the screening area, going through the screening process, going to lockers to retrieve personal belongings and exiting the

---

[5] Plaintiffs also seek to further amend their Amended Complaint "to limit the class to just the hourly workers at Defendants' BDL2 and BDL3 facilities, limit their claim for unpaid time from 10–20 minutes per shift to 2–6 minutes per shift, . . . limit the class period to March 15, 2020 when Defendants altered their security screening procedures in response to the COVID-19 Pandemic, . . . clarify that Defendants' 'agreement' to pay them for all their work is not in writing, and to plead more specifically which workweeks Plaintiffs Meunier and Delaroche worked overtime." (*Id.* at 1–2)

building." (ECF No. 63-2 ¶¶ 2, 28, 47, 49) Plaintiffs aver that the proposed amendments do not add additional facts and will not require additional discovery or delays to the proceedings. (ECF No. 63 at 2) To the contrary, Defendants decry Plaintiffs' untimely amendment as an attempt to significantly alter the nature and scope of the relief sought. (ECF No. 67 at 4–5) Specifically, Defendants assert that Plaintiffs have belatedly sought to include not only the time spent clearing the mandatory security screening process, but also the time spent walking to the security screening area; walking to the lockers or break room to collect personal belongings and walking to the exit of the facility at which point the employees "swipe out" of the facility. (*Id.*) Defendants argue that the information needed to assert such claims was in Plaintiffs' possession before the filing of the original Complaint and/or shortly thereafter, and that it is only after discovery has demonstrated the weakness of their claims that Plaintiffs seek to expand their claims.[6] (*Id.*) Finally, Defendants assert that it will suffer prejudice if Plaintiffs are permitted to amend the Complaint at this late— post discovery—juncture. (*Id.*) The Plaintiffs filed a reply to the Defendants' opposition in which they contest any assertion that the Defendants will be prejudiced by the amendment and reiterate that the clarification is not an effort to expand the Plaintiffs' claims. (ECF No. 69)

The Court agrees with Defendants that the motion should be denied because Plaintiffs have not offered any sound reason for the delay in asserting this expanded wage claim and to allow the amendment would be unduly prejudicial to Defendants. *See Foman,* 371 U.S. at 182. The deadline for Plaintiff to move to amend the pleadings was November 30, 2021. The motion to amend is clearly untimely. Further, the parties agreed in the Rule 26(f) Report that motions filed after November 30, 2021 "will require, in addition to any other requirements under the applicable rules;

---

[6] Defendants also assert that Plaintiffs attempt to alter the legal theory under which they proceed by making explicit that the agreement to pay hourly wages was not in writing. (*Id.*) As the Court has already denied the motion to amend the wage claims, the Court does not address this alternative basis upon which to deny the motion to amend.

a showing of good cause for the delay." (ECF No. 38 at 5) If, as Plaintiffs asserted, the proposed amendment narrowed the issues and "clarified" Plaintiffs' claims, the prejudice to Defendants would be *de minimus* or nonexistent and the delay would be of no moment. But this proposed amended complaint marks a significant shift in the nature and scope of the litigation; is based upon information which Plaintiffs themselves would have had based on their work experience or which they received early on in the discovery process; and Plaintiffs offer no satisfactory explanation as to why the amendment was not timely sought.

Plaintiffs assert that they only recently discovered that Defendants understood their claims to be premised solely on unpaid time spent undergoing the security screening process and summarily asserts that the Amended Complaint has always included "clock out" to "swipe out" time. In other words, Plaintiffs assert there was no delay in bringing the claim because the claim was already included in the Amended Complaint and the proposed Second Amended Complaint simply clarifies as much. The Court rejects this assertion and disagrees that the Amended Complaint can fairly be read to include a claim for unpaid time following completion of the screening process. It repeatedly references *only* the time spent undergoing the mandatory screening process; it makes no reference to any post-screening time spent collecting personal belongings or exiting the facility thereafter. Indeed, the proposed Second Amended Complaint *redefines* the mandatory security screening process to include walking to the security area,[7] waiting in lines leading up to the screening area, going to a locker room to retrieve personal belongings, and exiting the facility. As this claim was not previously asserted, the proposed amendment is untimely, and significantly so.

---

[7] The Court agrees with Plaintiffs that to the extent Plaintiffs clocked out prior to undergoing the screening process, the time needed to travel from the place where they clocked out to the security screening area is fairly contained within the claims in the Amended Complaint.

Further, Defendants' have demonstrated prejudice if the amendment were to be granted. Discovery as to liability and individual damages of the named Plaintiffs will close on November 1, 2022. The deadline for filing motions for summary judgment is looming. The proposed amendment, as discussed above marks a significant shift in the scope of the Plaintiffs' wage claims and it is unclear whether further inquiry regarding post-screening activities by Plaintiffs or putative class members through additional discovery would be required. Moreover, by expanding the claims to include unpaid time following completion of the screening process, the proposed amendment potentially expands the size of the putative class seeking compensation for unpaid overtime in Count Two. On balance, the Court concludes that it would be unfairly prejudicial to permit the proposed Second Amended Complaint and Plaintiffs have not established good cause for the same. *See Werking v. Andrews,* 526 Fed. Appx. 94, 96 (2d Cir. 2013); *Grochowski,* 318 F.3d at 86.[8]

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part. Plaintiffs' motion for leave to amend is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of September 2022.

 */s/ Kari A. Dooley*

KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[8] To the extent Plaintiffs intend to redefine the class—drop Del Rio as a Plaintiff; or limit the scope of the claims in the Amended Complaint—these goals can be achieved either during summary judgment or class certification briefing.